# UNITED STATES DISTRICT COURT

### District of New Jersey

Chambers of
**William H. Walls**
District Judge
_____

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

<u>NOT FOR PUBLICATION</u>

<u>MEMORANDUM</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

October 2nd, 2006

**Appearances:**

David Zatuchni, Esq.
Amy Baxindine Hill, Esq.
Zatuchni & Associates, LLC
2 Research Way, 3d Floor
Princeton, NJ 08540
          Attorneys for Plaintiff James Roberson


Roger B. Jacobs, Esq.
Neha Dalal, Esq.
Robyn Lauber
Jacobs Rosenberg, LLC
Gateway Four, Third Floor
100 Mulberry Street
Newark, NJ 07102
          Attorneys for Defendant Essex County Prosecutor's Office


Harry J. Del Plato
Ferdinando M. Pugliese, Esq.
Hall of Records - Room 535
Newark, NJ 07102
          Attorneys for the County Defendants

Re:     <u>James Roberson v. County of Essex et al.</u>; No. 02-5532 (WHW)
          Motions for Summary Judgment

Dear Litigants:

Defendant Essex County Prosecutor's Office ("ECPO") moves for summary judgment. The remaining defendants, County of Essex; Essex County Sheriff's Office; Essex County Division of Correctional Services; Essex County Jail; Armando B. Fontoura, individually and in his capacity as the Sheriff of Essex County; Dana Hobson, individually and in her capacity as Director of Essex County Division of Correctional Services; and Mark Stabinski, individually and in his capacity as Warden of the Essex County Jail ("the County Defendants"), also move for summary judgment. ECPO's motion is granted. The County Defendants' motion is granted in part and denied in part.

## FACTS AND PROCEDURAL BACKGROUND

On January 26, 2002, Plaintiff James Roberson was arrested by officers of the Newark Police Department. Although the parties apparently dispute whether Roberson was arrested for possession of heroin or for an outstanding bench warrant, it is undisputed that he was transferred that day to the custody of the Essex County Sheriff's Department because of the warrant. Plaintiff was placed in the Essex County Jail and remained there until his release on March 26, 2002, two months later. Despite protestations, plaintiff was never brought before a judicial officer until the day of his release. Although the bench warrant was issued with his name and social security number, further investigation revealed that plaintiff was not the true subject of the warrant. The true subject, Darren Jones, provided Mr. Roberson's identification to the police during an earlier arrest. Jones then skipped a court appearance, resulting in the issuance of the warrant. Although there is evidence that the drug charge was referred by the ECPO to the Newark Prosecutor's Office 10 days after his arrest, plaintiff was apparently never prosecuted for that crime.

Plaintiff brings the following claims:  (1) violation of his constitutional rights pursuant to 28 U.S.C. § 1983; (2) false arrest/false imprisonment; and (3) negligence.  Claims against the State of New Jersey were dismissed by this Court's March 28, 2005 Order.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  Id. at 248.  The moving party must show that if the evidentiary material of record was reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  In doing so, the Court must construe the facts and inferences in

the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

### I.  Essex County Prosecutor's Office

The ECPO argues that it is immune from suit under both the Eleventh Amendment and under common law prosecutorial immunity.  Because the Court finds that the Eleventh Amendment bars plaintiffs claims against the ECPO, it need not reach the common law question.

The Eleventh Amendment says that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The sovereign immunity of the states derives not only from the text of Eleventh Amendment, but from the structure of the Constitution itself.  See Alden v. Maine, 527 U.S. 706, 713 (1999) (noting that Eleventh Amendment immunity "is something of a misnomer" in this regard).  Absent consent, state sovereign immunity bars suit against a state by a citizen of that state.  Hans v. Louisiana, 134 U.S. 1 (1890).  Although the United States Congress may abrogate state sovereign immunity pursuant to its power to enforce the Reconstruction Amendments (i.e., the Thirteenth, Fourteenth, and Fifteenth), see Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), the Supreme Court has determined that 42 U.S.C. § 1983 does not create a right of action against the states.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Although state sovereign immunity does not apply to counties, it does apply to entities that function as an "arm of the state."  Chisolm v. McManion, 275 F.3d 315, 322-23 (3d Cir. 2001). The question for the Court, then, is whether the ECPO functioned as an arm of the state under the facts presented here.

The Third Circuit has clearly addressed that issue:

> In determining whether an entity is an arm of the state and, therefore, entitled to Eleventh Amendment immunity, we consider the following three factors: (1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. A party asserting Eleventh Amendment immunity bears the burden of proving its applicability. Although no single factor is dispositive, we have often held that the most important factor is whether a judgment resulting from the suit would be paid from the state treasury.

Id. at 323 (citing Fitchik v. New Jersey Transit Rail Ops., Inc., 872 F.2d 655 (3d Cir. 1989); Christy v. Pennsylvania Tpk. Comm'n, 54 F.3d 1140 (3d Cir. 1995)).

Applying the three "Fitchik factors," the Court finds that the ECPO has met its burden and is immune from plaintiff's § 1983 claims.[1]  With regard to the dominant first factor, there can be little doubt that any judgment in this case against this defendant would be paid from the state treasury.  In New Jersey, prosecutors acting in their law enforcement capacity are entitled to indemnification and defense by the State of New Jersey under the Tort Claims Act unless their acts or omissions involve actual fraud, actual malice, or willful misconduct.  Wright v. State, 169 N.J. 422, 456 (2001) (citing N.J.S.A. §§ 59:10A, 59:10-2).  Although he accepts this proposition, plaintiff makes two essential arguments in opposition: (1) the ECPO was acting in an administrative rather than a law enforcement capacity when it failed to ensure plaintiff's appearance before a judicial officer; and (2) there is a disputed question of material fact regarding possible willful misconduct on the part of the ECPO.  The Court finds these arguments unavailing.

The genesis of plaintiff's first argument is found in the Third Circuit's opinion in Coleman v. Kaye, 85 F.3d 1491 (3d Cir. 1996).  There, the court held that:

---

[1]Plaintiff consents to the dismissal of his state law claims against the ECPO.  (Pl.'s Opp'n Br. 24 n.7.)

county prosecutors in New Jersey can be characterized as having a dual or hybrid status.  It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State.  On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.  We therefore predict that the New Jersey Supreme Court, if presented with a case in this posture, would hold that county prosecutors are acting on behalf of the county when they make personnel decisions.

Id. at 1499.  Accepting for the purposes of this summary judgment motion that a county prosecutor is responsible for ensuring a criminal defendant's initial appearance before a judicial officer, a disputed question in this case, the Court finds that any such responsibility would be performed on behalf of the State of New Jersey.  At the core of plaintiff's complaint is that he was not brought before a judge within seventy-two hours after arrest, as required by New Jersey Court Rule 3:4-2.  If the county prosecutor fails to perform such a task, the New Jersey Attorney General may compel the county prosecutor to take action.  See N.J.S.A. § 52:17B-107(a) ("Whenever in the opinion of the Attorney General the interests of the state will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding."); see also N.J.S.A. § 52:17B-106 (providing procedures whereby "the Attorney General may supersede the county prosecutor for the purpose of prosecuting all of the criminal business of the state in said county").[2]  This is unlike the scenario in Coleman, which involved a personnel action that was found to be "the exclusive province of the county prosecutor."  85 F.3d at 1502.  To the contrary, bringing a detainee before a judicial officer is undoubtedly "criminal business," and "the Attorney General's supersedure power appears to

---

[2]Indeed, plaintiff apparently does not dispute that the New Jersey Attorney General had superseded the Essex County Prosecutor during the period in which plaintiff was detained.  (Harvest Cert. ¶ 15.)  The Court has great difficulty understanding plaintiff's argument that the ECPO was not acting as an arm of the state when the office was under the direct control of the state Attorney General during the relevant period.

have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' 'criminal business.'" Id. at 1501.

On the question of willful misconduct, the Court cannot agree that there is a disputed question of material fact. Although willful conduct "is not immutably defined," the New Jersey Supreme Court has held that a defendant acts with willful misconduct when that defendant,

> with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty [that] produces the injurious result.
> Although willful conduct need not involve the actual intent to cause harm, there must be some knowledge that the act is wrongful. [I]n order to satisfy the requirement of willfulness or wantonness there must be a "positive element of conscious wrongdoing." [New Jersey] cases indicate that the requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences. "Willful misconduct" is the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. It is more than an absence of "good faith." "Willful misconduct" does not refer to negligence; it is much more.

Fielder v. Stonack, 141 N.J. 101, 124 (1995) (internal citations omitted). Here, plaintiff has not produced a "mere scintilla" of evidence that the county prosecutor or any individual in his office engaged in willful misconduct; the ECPO cannot have knowledge or intent completely independent from the county prosecutor or his representatives. See, e.g., Tomlin v. Hildreth, 47 A. 649, 650 (N.J. 1900) (holding that a legal entity can only act willfully through its agents or servants). An additional problem in this regard is that plaintiff has not named the county prosecutor or any individual within the ECPO as a defendant in this suit. This is fatal in and of itself, as a county prosecutor's office "is not a government entity which can be sued under § 1983 separate from the individual who is the county prosecutor or the governmental entity that the county prosecutor serves." Briggs v. Moore, 2005 WL 1076059 at *4, No. 05-1906 (D.N.J. May 5, 2005) (Chesler, J.); see also Russel v. Foti, 2006 WL 1540744, No. 06-2130 (D.N.J. May 31,

2006) (Cooper, J.); El-Bey v. Peer, 2006 WL 231627, No. 05-3765 (D.N.J. Jan. 30, 2006)

(Chesler, J.); Massari v. Salem County Prosecutor's Office, 2005 WL 2033683, No. 03-1996

(D.N.J. Aug. 23, 2005) (Wolfson, J.).[3]

Because there is no evidence of willful misconduct on the part of individuals within the

ECPO, and because plaintiff's claims involve the "criminal business" of the State of New Jersey,

the Court finds that any judgment against the ECPO would likely be paid from the state treasury.

The first Fitchik factor weighs in favor of immunity for the ECPO.

Turning briefly to the second and third Fitchik factors, the Court finds that these too

weigh in favor of immunity for the ECPO.  The Court has already addressed the status of the

ECPO under state law, finding that it was acting on behalf of the state under the facts of this case.

With regard to the third factor, the ECPO conducts the criminal business of the state with limited

autonomy.  See Wright, 16 N.J. at 452 ("the county prosecutor's law enforcement function is

unsupervised by county government or any other agency of local government, but remains at all

times subject to the supervision and supersession power of the Attorney General").  For these

reasons, the Court concludes that the ECPO functioned as an arm of the state under the facts

presented here.  Plaintiff's complaint against the ECPO is dismissed, with prejudice.

## II.  The County Defendants

### A.  The § 1983 Claim

Under 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the

---

[3]While all of the cases cited are unpublished opinions, this Court finds the rationale of those opinions
persuasive.

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).  "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983."  City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell) (emphasis in original).  There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Id.

"The first step in any such [§ 1983] claim is to identify the specific constitutional right allegedly infringed."  Albright v. Oliver, 510 U.S. 266, 271 (1994).  Here, plaintiff alleges that he was subjected to an unlawful seizure and deprived of liberty without due process of law in violation of the Fourth and Fourteenth Amendments.  (Am. Compl. ¶¶ 31, 32.)  He contends that it was policy and custom in Essex County to disregard the New Jersey Rules of Criminal Practice, to not establish procedures to ensure correct identification of detainees, and to fail to supervise and train personnel on such matters.  He also asserts that the County Defendants acted recklessly and with deliberate indifference in the handling of detainees, causing the deprivation of his constitutional rights.  (Am. Compl. ¶¶ 33-36.)

### 1. Unreasonable Seizure

"A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement.  A seizure occurs even when an unintended person is the object of detention so long as the means of detention are intentionally

applied to that person." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). There can be no doubt that a seizure occurred in this case – the question for the Court is whether plaintiff's continuing detention was a seizure that violated the Fourth Amendment.

"The Fourth Amendment prohibits arrests without probable cause." Id. In the situation of a warrantless arrest, the United States Supreme Court has held that a probable cause determination must be made by a judicial officer within 48 hours after the arrest to pass Fourth Amendment muster unless there is "a bona fide emergency or other extraordinary circumstance." County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991).[4] Here, although a criminal complaint was prepared for his possession of heroin, plaintiff apparently never received a probable cause hearing on that charge. Instead, because of the erroneously issued bench warrant, plaintiff was transferred to the custody of the Essex County Sheriff's Department. As there is apparently no dispute that plaintiff was detained by the Essex County Sheriff's Department on the basis of the bench warrant and not the drug charge, (County Defs.' Br. 6; Am. Compl. ¶¶ 23-24), the Court must determine the validity of the detention as it relates to the warrant.

The validity of plaintiff's *arrest* on the basis of the erroneous warrant presents a thorny issue of constitutional law that has divided the federal courts. See generally Note, Constitutional Amnesia: Judicial Validation of Probable Cause for Arresting the Wrong Person on a Facially Valid Warrant, 79 Wash. U. L.Q. 1227 (2001). The Third Circuit has held that "a mistakenly issued or executed warrant cannot provide probable cause for an arrest." Berg, 219 F.3d at 269-70 (citing Whitely v. Warden, 401 U.S. 560 (1971)). But cf. Johnson v. Miller, 680 F.2d 39 (7th Cir. 1982) ("If an arrest warrant is valid on its face, its execution against the person named in the warrant does not violate the Fourth Amendment even if, because someone has made a mistake,

---

[4] Under New Jersey Court Rule 3:4-1, the determination must be made within *12* hours after arrest.

the person named in the warrant is not the person whom the authorities intended to arrest."). There is some tension, however, between the <u>Berg</u> holding and the Supreme Court's ruling in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979).  Berg had been arrested on a warrant that was issued in his name after a clerk mistakenly transposed two digits in the criminal complaint number.  In <u>Baker</u>, McCollan was detained over a long weekend on the basis of a facially valid warrant that had been issued in circumstances nearly identical to those in this case, but the Supreme Court found that this did not amount to a constitutional violation.  The <u>Berg</u> court distinguished <u>Baker</u> because:

> Unlike McCollan, Berg challenges the generation and execution of the warrant for his arrest, not the decision to incarcerate him after arrest.  At issue here is not whether authorities must investigate the claims of innocence of a person who has been legally arrested but what precautions the Constitution requires before an arrest warrant is issued and executed.

219 F.3d at 271 n.6.

In this case, plaintiff does not challenge the "generation and execution" of the bench warrant: "Mr. Roberson's constitutional rights were not violated because he was wrongfully arrested on a warrant, but . . . because . . . he was thereafter held in detention for two months . . . ."  (Pl.'s Br. 16.)  For this reason and because of plaintiff's alleged possession of heroin, the Court need not concern itself with the issue of plaintiff's initial arrest and immediate detention. Whether plaintiff's detention ultimately resulted in a Fourth Amendment violation remains a material question, however.  To answer this question, the Court must examine the parameters of the term "seizure" as it relates to the Fourth Amendment.

"Although the Supreme Court has repeatedly defined when a Fourth Amendment seizure occurs or begins, it has not determined when that seizure ends and Fourth Amendment protections no longer apply."  <u>Torres v. McLaughlin</u>, 163 F.3d 169, 174 (3d Cir. 1998) (holding

that "Fourth Amendment seizure principles may in some circumstances have implications in the period between arrest and trial," that "the limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention," and that post-trial incarceration does not qualify as a Fourth Amendment seizure).  More recently, and in conflict with other circuits, the Third Circuit has held that "[p]retrial custody . . . constitute[s] a Fourth Amendment seizure."  DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005); see also Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) (holding that restrictions imposed on a criminal defendant after he had posted bond but before trial amounted to a Fourth Amendment seizure). But cf. Armstrong v. Squadrito, 152 F.3d 564, 569-70 (7th Cir. 1998) (substantive due process under the Fourteenth Amendment rather than unreasonable seizure under the Fourth Amendment is the appropriate analytic framework when an individual is detained pursuant to a bench warrant because "due process regulates the period of confinement after the initial determination of probable cause"); Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998) ("While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments.").  In this case, it is somewhat unclear whether and when Roberson was properly classified as an arrestee, a pretrial detainee, or something else during the course of his confinement.  See United States v. Johnstone, 107 F.3d 200, 206-07 (3d Cir. 1997) ("Where the seizure ends and pre-trial detention begins is a difficult question.").  The Court need not undertake such analysis, however, because plaintiff never once appeared before a judicial officer.  Unlike the situation in Gallo, plaintiff never had an initial appearance and the opportunity for bail.  If Gallo's non-custodial restrictions following appearance before a judicial officer with the authority to grant bail amounted to a Fourth Amendment seizure, Roberson's prolonged detention certainly qualifies.

-12-

Having determined that plaintiff's detention amounted to a Fourth Amendment seizure, the question remains whether and when such seizure became constitutionally impermissible. With regard to the drug charge, it is clear that there was no probable cause to detain Roberson beyond the 48 hours allowed under County of Riverside v. McLaughlin.  With regard to the bench warrant, the answer is less clear.  Under the Third Circuit's determination in Berg that "a mistakenly issued or executed warrant cannot provide probable cause for an arrest," plaintiff was the subject of an unreasonable seizure no later than 48 hours after his arrest.[5]  Under Baker v. McCollan, however, it appears that detention for several days on the basis of a facially valid but erroneously issued warrant is constitutionally permissible where, as here, plaintiff does not directly challenge the issuance of the warrant.[6]  Unlike McCollan, however, plaintiff in this case does challenge his pretrial detention on Fourth Amendment grounds.  Under Third Circuit precedent, pretrial detention amounts to a Fourth Amendment seizure and there was no probable cause to support plaintiff's detention.  It follows that plaintiff suffered a deprivation of his Fourth Amendment rights.  Although tension in the Fourth Amendment case law remains, the Court's determination that plaintiff also suffered a due process violation mitigates any resultant uncertainty.

---

[5]If plaintiff was detained in the Essex County Jail solely on the basis of the bench warrant and not the drug charge, as the parties seem to accept, plaintiff's seizure would have been unreasonable as soon as he was transferred from the custody of the Newark Police Department.

[6]Despite this conclusion, the Supreme Court recognized that "[o]bviously one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment," and accepted for the purpose of argument that "depending upon what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"  443 U.S. at 144-45.

## 2.  Due Process

The United States Supreme Court has held that a *substantive* due process claim fails

when the right asserted is a liberty interest already protected by the Fourth Amendment.  Albright

v. Oliver, 510 U.S. 266 (1994); see also U.S. v. James Daniel Good Real Property, 510 U.S. 43,

50 (1993) ("the Fourth Amendment, rather than the Due Process Clause, determines the requisite

post-arrest proceedings when individuals are detained") (citing Gerstein v. Pugh, 420 U.S. 103,

125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system,

and its balance between individual and public interests always has thought to define the 'process

that is due' for seizures of person or property in criminal cases, including the detention of

suspects pending trial.")).  But see Armstrong, 152 F.3d at 569-70 (analyzing claims similar to

those in this case under the substantive due process framework).  Having determined that

plaintiff's Fourth Amendment rights were violated, the Court need not undertake a substantive

due process analysis.[7]

With regard to *procedural* due process, the Supreme Court has "repeatedly held that state

statutes may create liberty interests that are entitled to the procedural protections of the Due

Process Clause of the Fourteenth Amendment."  Vitek v. Jones,  445 U.S. 480, 488 (1980); see

also Walker v. Horn, 385 F.3d 321, 328 n.17 (3d Cir. 2004) ("State-created liberty interests are

entitled to the procedural protections of the Due Process Clause of the Fourteenth

Amendment.").  Here, New Jersey Court Rule 3:4-2 provides that a defendant's first appearance

following the filing of a complaint "shall occur within 72 hours after arrest, excluding holidays,

---

[7] Even if the Court were to analyze Roberson's claim as one of substantive due process, plaintiff's substantive rights may well have been violated by the County Defendants and summary judgment would be inappropriate.  See Armstrong, 152 F.3d 564 (explaining why prolonged detention without an initial appearance following arrest pursuant to a facially valid warrant shocks the conscience and offends substantive due process where it is the result of "deliberate indifference" on the part of the defendant).

and shall be before a judge with authority to set bail for the offense charged."  Although the

County Defendants counter that the rule is inapplicable because plaintiff was detained on the

basis of a bench warrant and not pursuant to a complaint, the Court is unpersuaded.  While the

rule provides that a defendant is to be brought before a judge after the filing of the complaint, the

rule also says that, "[i]f the defendant remains in custody, the first appearance shall occur within

72 hours after arrest."  N.J. Ct. R. 3:4-2.  Under the County Defendants' reading of the rule, an

individual arrested pursuant to a bench warrant could be held indefinitely without an appearance

before a judicial officer.  Although the complete absence of an initial appearance is clearly

untenable, Rule 3:4-1(b) also provides that, "[i]f bail was not set when an arrest warrant was

issued, the person who is arrested on that warrant shall have bail set without unnecessary delay,

and no later than 12 hours after arrest."  The bench warrant in this case does not address bail.[8]

(Pugliese Cert. Ex. 6.)

Non-discretionary statutes like New Jersey Court Rules 3:4-1(b) and 3:4-2 indicate the

"liberty interest in freedom from incarceration without speedy pretrial procedures."  Oviatt v.

Pearce, 954 F.2d 1470, 1475 (9th Cir. 1992) (finding a due process violation where plaintiff was

arrested pursuant to a bench warrant and detained for 114 days without a bail hearing or other

appearance).  Here, plaintiff's liberty interests were denied without any procedure whatsoever.

Process was denied despite the significant liberty interest involved, the minimal cost of ensuring

an initial appearance before a judicial officer, and the likelihood that such minimal procedure

would prevent the type of harm visited upon Roberson here.  See Matthews v. Eldridge, 424 U.S.

319 (1976); Oviatt, 954 F.2d at 1476.

---

[8]The bench warrant does, however, provide an explicit direction to the Sheriff of Essex County: "You are
ordered to take into custody the above defendant . . . *and bring him/her before the Superior Court*."  (Pugliese Cert.
Ex. 6.)  Had the Sheriff or his deputy followed that direction, this entire unfortunate affair could have been avoided.

Procedural due process must normally be afforded "predeprivation," or before the violation occurs.  Brown v. Muhlenberg Tp., 269 F.3d 205, 213 (3d Cir. 2001) (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  "When the complained of conduct is 'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur), however, the 'very nature of the deprivation ma[kes] predeprivation process impossible.' In such situations, postdeprivation process is all that is due."  Id.  In this case, New Jersey provides postdeprivation process in the form of the false imprisonment tort action.  Because the conduct plaintiff complains of is not "random and unauthorized," however, but allegedly the well-established custom and policy of the County Defendants, postdeprivation process alone is inadequate.  See generally Zinermon, 494 U.S. at 127-30 (discussing the types of cases in which postdeprivation process is all the process that is due).

As virtually every court to consider the issue has determined, the Constitution does not "tolerate the absence, following arrest, of any procedures whatsoever."  Armstrong, 152 F.3d at 575-76.  Because plaintiff was subject to prolonged detention without the faintest procedural protection, his constitutional rights were undoubtedly violated.  Whether the customs or policies of the County Defendants caused such violation is the question which remains.

### 3.  The Customs and Policies of the County Defendants and Causation

Having found that plaintiff's constitutional rights were violated as a result of his prolonged detention, the Court must next examine whether such violations may have been the result of the customs or policies of the County Defendants.  There is at least one policy at issue here apparently not in dispute.  As counsel for plaintiff succinctly puts it, "Mr. Roberson's injury was caused by the Defendants' admitted policy and custom of abdicating all responsibility to court personnel in ensuring that arrestees receive a prompt judicial hearing."  (Pl.'s Br. 2.)  As

-16-

the County Defendants concede, "once an individual is detained in a County facility pursuant to a bench warrant, it is the responsibility of the Criminal Division of the State of New Jersey to set court dates for detainees and arrestees."  (County Defs.' Br. 20.)  The County Defendants apparently have no procedure or training in place to ensure that those detained under a bench warrant *ever* receive a judicial hearing or that the court system is made aware when detainees languish in jail without appearing before a judicial officer.

"If, as here, the policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice.'"  Berg, 219 F.3d at 276 (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).  Maintaining a "non-policy" in the face of the recurring danger of prolonged detention and failing to train personnel to avoid such risks is adequate to support a jury finding of "deliberate indifference" that caused plaintiff's injury.  See Oviatt, 954 F.2d at 1477 (local government entities may be liable under § 1983 "when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can be said to have been deliberately indifferent to the need.'") (quoting City of Canton, 489 U.S. at 390); Armstrong, 152 F.3d at 578-79 (finding that the risk of prolonged detention after arrest pursuant to a warrant represents a recurring danger and ignoring that danger "seems to be a policy of deliberate indifference").  As the Armstrong court persuasively put it,

> jailers hold not only the keys to the cell, but also the knowledge of who sits in the jail and for how long they have sat there.  They are the ones directly depriving detainees of liberty. . . .  The jail acts at its own peril if it passes responsibility off on another party - whether the courts or the prosecutor.  While the Constitution does not impose an affirmative duty on jail officials, it does hold them liable when their failure to devise adequate policies results in an injury.

-17-

152 F.3d at 579.

### B. The State Law Claims

The County Defendants make two arguments relating to plaintiff's state law claims. The first argument is that the claims are barred because plaintiff did not file a timely notice of claim under the New Jersey Tort Claims Act. The second argument is that plaintiff's claims do not meet the "verbal threshold" of the Tort Claims Act.[9] The Court addresses these arguments.

With regard to the first argument, the Court believes that the doctrines of equitable tolling and equitable estoppel apply to render plaintiff's notice of claim timely. Plaintiff filed his notice of claim on May 6, 2002. Accepting for the moment the County Defendant's assertion that plaintiff's cause of action accrued on the date of his arrest, January 26, 2002, plaintiff filed approximately 100 days later. Plaintiff admits that this violates N.J.S.A. 59:8-8, which provides that "[t]he claimant shall be forever barred from recovering against a public entity if: He failed to file his claim with the public entity within 90 days of the accrual of his claim." Plaintiff argues, however, that the County Defendants should not be able to use the 60 days that plaintiff was wrongfully detained against him. The Court agrees.

Although plaintiff never made a motion to file a late notice, as contemplated by N.J.S.A. 59:8-9,[10] the doctrine of equitable tolling is not dependent upon that provision. See U.S. v.

---

[9]Under the verbal threshold, "[n]o damages shall be awarded against a public entity for pain and suffering resulting from an injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d).

[10]N.J.S.A. 59:8-9 says that "[a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act; provided that in no event may any suit against a public entity arising under this act be filed more than 2 years from the time of the accrual of the claim."

Midgely, 142 F.3d 174 (3d Cir. 1998) (noting that equitable tolling is guided by "'sound legal principles as well as the interests of justice'") (quoting Alvarez-Machain v. U.S., 96 F.3d 1246, 1251 (9th Cir. 1996) (applying equitable tolling in a Federal Tort Claims Act case where the plaintiff was incarcerated by the defendant)).  While plaintiff was wrongfully detained for 60 days, his filing was not more than 10 days late.  The County Defendants cannot claim prejudice as a result of such a brief delay, particularly when their allegedly unlawful behavior frustrated plaintiff's ability to exercise his rights.  See Tuckey v. Harleysville Ins. Co., 236 N.J. Super. 221 (App. Div. 1989) ("equitable principles of estoppel can preclude a public entity from asserting defenses under N.J.S.A. 59:8-1 *et seq.* in certain circumstances") (citing Anske v. Borough of Palisades Park, 139 N.J. Super. 342 (App. Div. 1976) (finding that, in the context of a late filing under the New Jersey Tort Claims Act that did not prejudice the defendants, "equitable principles should apply to relieve unjust consequences of literal compliance")).  The Court deems plaintiff's notice of claim timely-filed.

Turning to the second argument, the Court agrees with the County Defendants.  Plaintiff has presented no evidence indicating that he is able to meet the verbal threshold and apparently concedes the point.  (Pl.'s Br. 20 n.6.)  For this reason, he may not recover pain and suffering damages on his state law claims.[11]

**C.  The County Defendants in their Individual Capacities**

"A suit against a governmental officer in his or her official capacity is treated as a suit against the governmental entity itself."  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 580 (3d Cir. 2004).  Here, plaintiff names several County Defendants not only in their official capacities, but in their individual capacities, as well.

---

[11]Although not raised by the parties, the Court also notes that N.J.S.A. 59:9-2(c) bars any award of punitive damages against a public entity.

Plaintiff has presented no evidence that any individually-named defendant in this case was personally involved with or had knowledge of plaintiff's detention, however.  Only through an exercise of policy-making authority, then, could any of the defendants be individually connected to plaintiff's detention.  Id. at 586.  Although this is the case, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  Id.  "In other words, if the supervisor *personally* devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act."  Armstrong, 152 F.3d at 581 (finding no evidence in the record that would support individual liability on the part of the county sheriff and the jail commander under this standard) (emphasis added).  Here, there is not one single piece of evidence in the record to indicate the scope of the individual defendants' policy-making responsibilities.  Additionally, there is absolutely no evidence regarding the establishment and implementation of the detention policies in Essex County or the individual defendants' role in that process.  Facts matter at summary judgment and plaintiff has presented the Court with no facts that would support a finding of individual liability against the County Defendants under § 1983.[12]  For substantially the same reasons, the individual-capacity state-law tort claims also fail. See Delbridge v. Schaeffer, 238 N.J. Super. 323, 354-55 (Law Div. 1989), aff'd 297 N.J. Super. 1 (1993), cert. denied, 135 N.J. 467 (1994), cert. denied 513 U.S. 832 (1994) (holding that, under the New Jersey Tort Claims Act, a plaintiff may not recover from a senior employee for a tort

_____

[12]The Court also notes that plaintiff does not allege any specifics regarding the individually-named defendants in the complaint and does not include any arguments in his brief in opposition to the County Defendants' (admittedly cursory) argument that there is inadequate evidence to establish individual liability.  Plaintiff apparently expects the Court to allow the claims of individual liability to go to trial on the basis of the individuals' job titles alone.  This will not suffice.

committed by a subordinate employee absent the senior employee's direct involvement in the tort).  The Court cannot subject the County Defendants to individual liability when there is no evidence in the record relating to their involvement.

## CONCLUSION

The Court finds, as a matter of law, that plaintiff's constitutional rights were violated. Whether the County Defendants were "deliberately indifferent" to plaintiff's constitutional rights and thereby caused plaintiff's injury for the purposes of 28 U.S.C. § 1983 must await the fact finder.  Plaintiff's state law claims are also maintainable, except for pain and suffering damages. Because the Essex County Prosecutor's Office is not an entity subject to suit and is, in any event, shielded by state sovereign immunity, plaintiff's claims against it are dismissed, with prejudice. Because plaintiff has presented no evidence that would give rise to liability on the part of any defendant in his or her individual capacity, all such individual claims are also dismissed, with prejudice.

s/William H. Walls
United States Senior District Judge